## Stanley, et al. v. Wentworth, et al.

(Decided October 17, 1924.)

### Appeal from Trimble Circuit Court.

1. Wills—Evidence of Delirium of Aged Testator Held Sufficient to Take Question of Capacity to Jury and to Warrant Verdict Against Will.—Evidence as to mental incapacity of aged testator, who was almost constantly delirious, held sufficient to take question to jury and to warrant verdict against will.

2. Wills—Evidence Held Sufficient to Take to Jury Question of Undue Influence Over Aged Testator, and to Support Verdict Against Will.—Evidence of Undue influence of wife held sufficient to take question to jury and to authorize verdict against will, of aged testator who was almost constantly delirious.

H. K. BOURNE and CHAS. H. SANFORD for appellants.

W. B. MOODY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Morton R. Stanley, a man 80 years of age, died in September, 1920, a resident of Trimble county. He left a will wherein after providing for the payment of his debts and funeral expenses, he devised all his property of every kind to his wife, the appellant Nannie E. Stanley.

The will was probated in the county court without objection, but an appeal was prosecuted by certain of the heirs at law, and upon a trial in the circuit court the jury found the instrument not to be his will, and this is an appeal from a judgment on that verdict.

The grounds of contest were mental incapacity and undue influence. The will was executed on the 31st of January, 1920, and on the 16th of January theretofore the decedent had had an accident by which he had fractured his hip, and was at the time the will was executed confined to his bed. Some time before his injury he had entered into a written contract whereby he was to convey certain land to two other persons, and on the 30th day of January those two persons, together with a deputy county clerk, went to his home for the purpose of closing up that transaction. After it had been closed it was suggested to the deputy clerk by a son of the decedent, who lived in the home with him, that his father's other business ought to be fixed up, and the making of a will

for him was suggested. There lived in the home this son and his family, together with another grandson, and the other heirs at law of the testator were grandchildren who did not live in the family.

During this talk the appellant Nannie E. Stanley, decedent's wife, came into the room and stated to the deputy clerk who had agreed to write the will that she wanted the property made over to her, whereupon the clerk asked Mr. Stanley if he wanted to make a deed or a will, and Mrs. Stanley again said she wanted it made over to her, whereupon Mr. Stanley said, "Henry will fix it all right." Then Mrs. Stanley said, "I want it fixed so Anna (a granddaughter) won't come around pestering me." After there had been some discussion the clerk asked Mr. Stanley if he wanted both a will and deed written, and he said, "Yes, go ahead and do that,"

"Give it to Nan as long as she lives, so none of the others can interfere with her or bother her in any way,"

whereupon Mrs. Stanley said:

"I don't want the deed that way, I won't have it that way; I want it to do with as I please,"

whereupon Mr. Stanley said to her:

"You can do with it as you please; I will fix it so none of them can bother you; you can have it for life and at your death let it go to the children."

Then she said:

"I don't want it that way, I want it to do with as I please."

Then Mr. Stanley inquired of the clerk if he could fix it so they would not bother her in any way and could not come around and interfere with her, and the clerk informed him that he could; then Mrs. Stanley again said:

"If I wanted to sell it and get a big price for it I couldn't sell it at all if you fix it that way,"

whereupon Mr. Stanley inquired of the clerk if it could be fixed so she could sell it and then give the money to the children after her death. He was informed that it

could be fixed that way and reinvested in other land, whereupon Mrs. Stanley again said:

> "Maybe I wouldn't want to buy other land; I want it outright,"

and then Mr. Stanley said:

> "I reckon she helped me to make the most I have got anyway, and she has been awfully good to me since I have been sick and down, has waited on me; they are her children as well as mine, I reckon she will treat them all right and let them have it at her death; they are her children as well as mine,"

whereupon she said:

> "I reckon they are,"

and then Mr. Stanley said:

> "If I give it over to her and she doesn't do right by the children, she ought to,"

and this she agreed to do. Then Mr. Stanley said to the clerk:

> "Well, if she says she will do that, I reckon you can fix it the way she wants it."

This is the evidence of the deputy clerk who wrote the will about what occurred the day before it bears date. He then left, it being late in the afternoon, and the next day returned with the instrument prepared as Mrs. Stanley wanted it, and it was executed.

There is no serious contention that the evidence did not authorize the submission of the question to the jury of mental capacity. A number of witnesses who knew the decedent well and had seen him during the interval between his injury on the 16th of January and the date of his will, expressed the opinion that he was not competent to make it. Among them was a physician who had been during that period in attendance upon him. That physician had visited him ten or eleven times between the 16th and the 31st, and testifies that upon each of his visits, except the first when the injury had just occurred, decedent was delirious. That physician saw him on the 30th day of January and again on the first day of February, and states he was delirious upon each of those days.

Other witnesses who testified said they had assisted in waiting upon him at and before the date of the will,

and that he was almost continually out of his head, and at times raved and resisted so that it was difficult to keep him in bed. The doctor testified that he had placed his leg or hip in a plaster, and that decedent was so violently delirious upon one or more occasions that he tore the plaster off of his limb and it had to be replaced.

A bare statement of this much of the evidence, taken in connection with the decedent's injury and his mental and physical condition resulting therefrom, and the fact that he was then 80 years of age, abundantly authorized the submission to the jury of the question of mental capacity.

But it is said that there was no evidence of undue influence, and that the court erred in submitting that question. We have quoted above freely from the evidence of the man who prepared the will, and what occurred before its preparation. That evidence, if believed by the jury, certainly authorized a verdict of undue influence. It shows that decedent wanted to devise to his wife only a life estate in his property, and to thereafter give it to his children, meaning, doubtless, his children and grandchildren; and it shows that because of the insistence of his wife, the sole beneficiary in the will, he finally agreed that it might be given to her absolutely upon her promise that at her death she would divide it among the children.

The evidence on either one of the issues authorized a verdict against the will.

Judgment affirmed.